IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division



EZRA CHARLES CALLOWAY, JR.,

    Plaintiff,

v.

WARDEN WOLFE, *et al.*

    Defendants.

Case No.: GJH-16-3595

# MEMORANDUM OPINION

In response to Plaintiff Ezra Charles Calloway Jr.'s *pro se* civil rights complaint alleging inadequate conditions of confinement and medical care while incarcerated, Defendants Warden John Wolfe, Lt. Matthew Mitchell, and Officer Yeselle Fidderman (collectively, "Correctional Defendants") filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 17. Defendants Danielle Ballard, Ruth Pinkney, P.A., Paul Matera, M.D., and Jason Clem, M.D. (collectively, "Medical Defendants") filed a similar motion. ECF No. 22.[1] Plaintiff has filed a Motion for Summary Judgment, ECF No. 26, which the Court will also construe as an opposition to Defendants' motions. ECF No. 26. The Correctional and Medical Defendants have filed responses to Plaintiff's motion. *See* ECF Nos. 27, 28. No hearing is necessary to resolve the matters pending before the Court. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Defendants' Motions shall be granted and Plaintiff's Motion denied.

---

[1] The Clerk is directed to correct the spelling of Defendants' names on the docket. Additionally, Plaintiff's Complaint references the following defendants that have not been served: CO II Smith; Nurse Katty; Dr. Crige. For the same reasons that Plaintiff's claims against Correctional and Medical Defendants fail, claims against the remaining defendants are dismissed.

1

# I. BACKGROUND

Plaintiff is an inmate committed to the custody of the Department of Public Safety and Correctional Services and confined at all times relevant to the complaint to the Eastern Correctional Institution ("ECI"). Plaintiff claims that he fell from an upper bunk on August 11, 2016, resulting in an injury to his finger. ECF No. 4 at 3.[3] He states that he was asleep in the upper bunk, it was "seriously hot without a fan," and he "ended up falling off the top bunk." *Id.* Plaintiff injured his right pinkie finger, "splitting it on both sides to the bone and losing [his] nail." *Id.* When he landed, Plaintiff claims he hit the right side of his head, causing "pain and stiffness in [his] neck on the left side." *Id.*

Plaintiff alleges that Officers Fidderman and Smith were assigned to the tier where he was housed and the injury occurred. *Id.* When Plaintiff filed an administrative complaint, or "grievance," with the "7–3 shift," Lt. Mitchell refused to sign the receipt because Plaintiff had raised complaints about more than one issue. *Id.* at 3–4. Plaintiff states he initially filed the administrative complaint on August 24, 2016, but had to re-write it so many times it "did not get signed and acknowledged until September 6, 2016." *Id.* at 4. Although not clearly stated in the Amended Complaint, Plaintiff appears to have raised a claim in his administrative complaint that the double bunk from which he fell was constructed in such a manner as to make it unsafe for use. He explains that the bunks have no protective guards or railing and no ladders. *Id.* He states the bunks were originally designed as single beds, but are now welded together to form bunk beds "with nothing to protect one from falling off while asleep." *Id.*

Plaintiff states he was admitted to the "medical ward" the day after he injured his finger. *Id.* He claims that "the entire medical department staff at [ECI] was responsible for my

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

unadequate (sic) medical care." *Id*. Plaintiff alleges he was under the care of medical staff from August 12, 2016 through August 22, 2016, and complains he was discharged "without any dressings for my wound and pain medication relief." *Id*. He claims that medical care was improper because it took 24 hours for him to receive pain medication and another 24 hours to receive bandages "to keep it covered and clean from the bacteria." *Id*. He states that the "doctor and P.A. was (sic) responsible for prescribing these things . . . once [he] was discharged." *Id*. Plaintiff states that the medical care provided was improper because he was not sent directly to a hospital and has not been seen by a "nerve hand specialist." *Id*. Rather, he states he has "only seen an in-house Orthopedist who recommended therapy." *Id*. The therapy had just started in November of 2016, and Plaintiff claims it was not working and sometimes made the pain worse. *Id*. He claims he still has pain in his neck.

## II. STANDARD OF REVIEW

To survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks

3

omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' motions are styled as Motions to Dismiss, or in the Alternative, Motions for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery). Summary judgment is appropriate if "materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987) If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex,* 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson,* 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1986).

## III. DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976). Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to provide him with a safe bed and failing to provide adequate medical care after Plaintiff fell out of the bed on August 11, 2016. Each claim is addressed in turn.[4]

---

[4] To the extent that Plaintiff's intent was to also raise state law claims of negligence or medical malpractice, those claims shall be dismissed without prejudice. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988); *see also* 28 U.S.C. §1367(c).

5

### A. Conditions of Confinement

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was *objectively* sufficiently serious' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

Notwithstanding Plaintiff's physical injuries, the Court has no basis to find that sleeping in an elevated bed without guardrails is a sufficiently serious deprivation of a basic human need. *See De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) ("Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."). But even if it was, Plaintiff does not allege that the Correctional Defendants had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298–99 (to establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded); *see also Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002) ("the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so")).

Plaintiff seeks to impose liability on the Correctional Defendants based solely on the fact that he fell from the bunk in his cell.[5] *See* ECF No. 26. Plaintiff's only allegation against the Correctional Defendants is that they were informed about his fall and the resulting injury to his finger. *Id.* at 4. Plaintiff does not allege that the Correctional Defendants were aware that Plaintiff's bed posed any risk of serious physical harm—either from damage to the bed itself or Plaintiff's risk as a fall hazard. Thus, the claims regarding the condition under which Plaintiff was confined shall be dismissed for failure to state a claim.

### B. Medical Care

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, however, the Court does not have to parse the objective and subjective components of deliberate indifference because the record shows that Defendants provided Plaintiff with prompt medical

---

[5] In verified medical records, Plaintiff is reported to have said he fell asleep sitting on the edge of his bed, began to fall, and injured his finger when he caught himself during the fall. ECF No. 17-4 at 36.

care. While Plaintiff claims that the Correctional Defendants failed to provide him with prompt access to medical care, ECF No. 26 at 4, the Correctional Defendants provide verified medical records, undisputed by Plaintiff, that establish that he was seen on the day of the injury by a Registered Nurse at 4:08 a.m. as a "follow-up" to an earlier examination for the injury to his finger and he was seen again by Dr. Matera at 7:52 a.m., when he was referred for evaluation by an orthopedic specialist. ECF No. 17-4 at 2, 4.[6] Thus, there does not appear to have been much delay in the delivery of medical care.

Plaintiff also asserts in his Amended Complaint that the medical care provided by the Medical Defendants was not proper; however, he appears to abandon this claim in his Motion for Summary Judgment when he states, "Plaintiff is not disputing the medical care" and addresses his motion only to the liability of the Correctional Defendants. ECF No. 26 at 1–2. Regardless, the Medical Defendants move to dismiss the claims against them because Plaintiff did not allege facts sufficient to establish a constitutional claim. ECF No. 22. Indeed, Plaintiff simply disagreed with the type of care provided—Plaintiff admits he was admitted to the infirmary for his injury for almost one month, was seen by an orthopedist, and was referred to physical therapy, but claims that the medical care was not proper because he was not referred to a specialist. While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013). Because the evidence indicates that the treatment was adequate to address the need, the Medical Defendants are entitled to have the claims against them dismissed. Therefore, Plaintiff's claims against the Correctional Defendants and Medical Defendants for inadequate medical care fail.

---

[6] Plaintiff claims the injury occurred on August 11, 2016, but the medical record indicates the injury occurred on August 16, 2016, the date he was seen by medical staff. ECF No. 17-4 at 2.

8

## IV. CONCLUSION

For the foregoing reasons, the Correctional Defendants and Medical Defendants' Motions to Dismiss, or in the Alternative, Motions for Summary Judgment, ECF Nos. 17, 22. shall be granted. Plaintiff's Motion for Summary Judgment, ECF No. 26, shall be denied. A separate Order follows.

Dated: March 16, 2018

GEORGE J. HAZEL
United States District Judge